ISAAC GOODMAN, as Guardian ad Litem of RALPH GOODMAN, Respondent, *v.* GEORGE H. ROBINSON, Appellant.

First Department, May 2, 1919.

**Master and servant — negligence — injury to laborer while passing between stack of grain and threshing machine — evidence — verdict against weight of evidence on issue of plaintiff's exercise of due care and not on issue of defendant's negligence — plaintiff not negligent as matter of law — verdict not excessive.**

In an action under the Employers' Liability Act by an ordinary farm hand, without previous experience as such, to recover damages for the breaking of his right arm, it appeared that the plaintiff, who had been ordered by the defendant's foreman to assist in threshing grain, was injured while passing between a grain stack and the threshing machine through a space between twelve and eighteen inches wide. There was testimony that a belt running over a pulley sixty-nine inches above the ground caught the plaintiff, who was only five feet six inches tall, by the left sleeve, jerking him forward, and his right arm, which was thrown out to protect him, was broken. The case was tried on the theory that when the belt was in motion, loose and flapping up and down and wobbling sideways, it was dangerous for any workman to pass between the belt and the grain stack, as the defendant's foreman knew or should have known, and that it was an act of negligence to order the plaintiff to enter this narrow space under the circumstances. Evidence examined, and

*Held,* that a verdict in favor of the plaintiff is not against the weight of the evidence on the issue of defendant's negligence, but is against the weight

of the evidence on the issue of plaintiff's exercise of due care, and that the judgment should be reversed and a new trial granted.

Plaintiff, however, was not negligent as a matter of law under the circumstances.

A verdict of $10,000 is not excessive, the plaintiff's arm having been rendered practically useless for manual labor, if the accident was solely due to defendant's negligence.

APPEAL by the defendant, George H. Robinson, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Bronx on the 7th day of November, 1918, upon the verdict of a jury for $10,000, and also from an order entered in said clerk's office on the same day denying defendant's motion for a new trial made upon the minutes.

*Robert C. Beatty* of counsel [*Olney & Comstock*, attorneys], for the appellant.

*Alfred M. Bailey* of counsel [*Robert Spear*, attorney], for the respondent.

SHEARN, J.:

In this case the plaintiff has recovered a verdict of $10,000 for a broken right arm. While such a verdict is on its face extraordinary, it is not excessive if the permanent resulting condition of the arm is solely due to defendant's negligence, for owing either to the nature of the original fracture or, and more probably, to the fact that the broken bones had to be reset during the ordinary period of knitting, the result has been that the right arm of the plaintiff, who is an ordinary laborer, has been rendered practically useless for manual labor. The consequences are, therefore, very serious to the plaintiff.

According to plaintiff's testimony, which is absolutely uncorroborated, the facts of the case are substantially these: On September 7, 1917, the plaintiff was employed as an ordinary farm hand on defendant's farm at Northport, L. I., and had had no previous experience as such, his prior employment having been that of a sailor. Plaintiff was eighteen years old at the time. Defendant's foreman, Douglas, ordered plaintiff and a gang

of men to assist in threshing grain. The grain was piled in three stacks against the wall of a cellar of a barn which had been destroyed. It was, therefore, impossible to get around the stacks at the rear. A threshing machine was placed between two of the stacks and very close thereto. On the side of the machine, upon which side plaintiff was injured, the lane between the machine and the grain stack was very narrow, being about eighteen inches near the front of the machine, and only twelve inches wide a little further in. On this right side of the machine were pulleys, over the top one of which, sixty-nine inches from the ground, ran a belt from an engine stationed twenty-five feet to the rear of one facing the machine. When the engine and machine were in operation the top of the belt moved from the direction of the engine towards the thresher over this top pulley and then down and back and over an idler pulley sixty-one inches from the ground. On the morning of the accident the apparatus was being adjusted and tested out, preparatory to being operated. On the orders of Douglas, plaintiff did various things in helping to get ready, such as oiling the machinery and helping fill the engine with gasolene and water, and then he stood on the right-hand side of the threshing machine, about two feet from the end of the grain stack on the right-hand side of the thresher, as one faced it from the direction of the engine. The belt attached to the machine was started and stopped two or three times in the testing process, and plaintiff observed that the belt was loose and flapped up and down as it ran, this being apparently due to the fact that the engine was not blocked far enough away from the machine. Plaintiff heard one of the men at the back of the thresher calling for some one to come and assist him. Plaintiff saw Douglas motion to him and understood from the motion that he was to go to the assistance of the man who had called. Plaintiff made signs to Douglas, as if to inquire as to whether or not he was the one to whom Douglas was beckoning, and Douglas nodded his head. Plaintiff then started to go through the narrow lane to the assistance of the man at the rear of the thresher. Plaintiff entered the narrow lane with his left side toward the traveling belt, his left arm being crooked or bent, with his forearm across the front of his body. He had a

heavy coat on. As he proceeded he noticed that the belt was flapping up and down. Suddenly it swerved to the right and, although he crouched against the stack, his left arm was in some manner caught by the belt. It is claimed by the defendant, it should be stated here, that the belt had no open joint and that the ends were solidly cemented together, but an examination of the photograph, defendant's Exhibit F, shows very plainly that a piece had been let into the belt and was held by lacing at each end, and at one of the joints there was a considerable opening, which might have caught the plaintiff's sleeve. Plaintiff's account of what followed is confused. He says: "I seemed to go forward and put my right hand out to protect myself from falling, and the first thing I knew, something had hit my right hand, and I was down." On cross-examination he testified: "I had pushed my right arm out to protect myself, as I flung forward, and my arm went right between this belt there, and pulled me — sort of dragged and pulled me over this wheel, and the weight of my body pulling me off my feet, broke my arm. * * * Q. So that both arms were caught in the thresher? A. No; I had released myself when I — as I stumbled forward. * * * Q. So that, first, the way the accident occurred was, the left sleeve caught; you threw out your right hand to protect yourself, or guide yourself, and in doing that, the same belt caught the right arm, and took it in over the machinery? A. Yes. * * * Q. Do you know whether or not your right arm was caught in that same belt as you have just a moment ago testified? A. If you call it knowing or remembering, I don't know. * * * Q. So that whether your right arm was caught or not in that belt, it was caught or seized in between the belts, the upper and lower belts, and your arm was then thrown by mechanism or dragged by the belt, you do not know which, in over the wheels of the machine, and your arm cracked, broken? A. Yes; that is what I do mean. Q. Is that correct? A. Yes; that is correct."

This is all difficult to understand. Plaintiff was only five feet six inches tall, and the pulley was sixty-nine inches above the ground. There is no testimony that the left sleeve was torn, and there was no injury whatever to the left arm. How

he got his right arm around and in " between the belts " is hard to perceive. The fact, however, as testified to is that the belt caught him by the left sleeve, jerked him forward, and his right arm, which was thrown out to protect him, was broken as he was thrown against the machine. Plaintiff testified that it all happened in a twinkling and he could give no better explanation. Considering the fact that both bones of the forearm were badly broken, and it being evident that he came in contact with the machine, and it being possible that the belt, with this opening in it, took a sufficient pinch or hold upon his coat to draw him off his feet and throw him forward, doubtless whether the accident could or did happen in that manner was a question of fact to be decided by the jury. Assuming then that the accident happened in this manner, we come to the question of liability.

The action was tried under the Employers' Liability Act (Labor Law [Consol. Laws, chap. 31; Laws of 1909, chap. 36], art. 14, as amd. by Laws of 1910, chap. 352), and the theory of the case as tried was that when the belt was in motion, loose and flapping up and down, and wobbling sideways, it was dangerous for any workman to pass between the belt and the grain stack, as the defendant's foreman knew, or should have known, and that it was an act of negligence to order the plaintiff to enter this narrow space under these circumstances. One troublesome phase of the case is the emphasis placed upon the lateral motion of the belt. This greatly accentuated the danger, but it did not appear that the belt had previously done anything except flap up and down, and in the absence of any testimony (expert testimony having been improperly rejected by the trial court) that a loose belt flapping up and down would tend to wobble laterally, it seems clear that the defendant should not be charged with the negligence based upon the lateral wobbling of the belt. Yet the defendant's counsel made no point of this and took no exception to the court's defining the issue of negligence as follows: " The only ground upon which you may find the defendant negligent * * * is if you find that this belt was so placed upon these two machines that it flopped or wobbled laterally *or otherwise,* and that the defendant's superintendent either knew, or as a reasonable man under

the same circumstances should have known, what the condition of that belt was, and with knowledge of that condition directed or ordered the plaintiff to be in the neighborhood of that belt at that time." Under these circumstances, I do not see how it can be said that a *prima facie* case of negligence was not made out.

The finding of negligence is challenged as against the weight of the evidence. There was no eye witness of the accident. One of defendant's employees, Moore, gave some testimony from which it might be inferred that the plaintiff put his hand upon one of the pulleys while it was in motion, but this is consistent with plaintiff's having thrown out his hand to save himself, for the witness Moore did not claim to have seen the accident, or to have seen the plaintiff do anything except put out his hand, as above stated. Douglas, the foreman, testified that he did not see the accident. His testimony concerning the surrounding circumstances, however, if true, entirely negatives and destroys plaintiff's version of the accident. It was, therefore, a question of veracity between the plaintiff and Douglas on the oral testimony and, as Douglas, although no longer in defendant's employment, might nevertheless have been found to have bias, for he was explicitly charged with responsibility for the accident, it was for the jury to choose between the two. The strongest attack upon the plaintiff's case is based upon the alleged improbabilities, if not the physical impossibility, of the accident happening as testified to; but this was peculiarly for the jury.

There is one ugly piece of evidence against the plaintiff, consisting of his affidavit, defendant's Exhibit C, made for an investigator employed by the defendant, in which he said: " I was oiling the machine, and while doing this the belt caught my arm and threw me on the wheel." This affidavit gives evidence of being carefully prepared and of being considered by the plaintiff, for it is corrected in one place and the correction is initialed by the plaintiff. Plaintiff claims that he did not read this affidavit. If the defendant had any evidence or claimed that plaintiff was hurt while oiling the machine, I think this exhibit would require a new trial on the ground that the verdict is against the weight of the evi-

dence, but Douglas positively denied that the plaintiff did any oiling, saying that he did all of it himself, and there is no claim by any other witness for the defendant that plaintiff oiled the machine or was hurt while oiling it.

Again, there is the testimony of the hospital doctor that plaintiff told him that "While removing belt from threshing machine, he caught his arm in this belt, and it was broken, the arm." But there is no testimony that plaintiff removed the belt from the machine. On the contrary, defendant's testimony is that at the time of the accident the belt had been thrown off. But all of these considerations were for the jury and, although they make a bad impression, yet, when analyzed, they do not furnish ground for holding that the verdict is against the weight of the evidence on the issue of defendant's negligence, upon the theory of liability upon which the case was submitted to the jury.

We are of opinion, however, that on the issue of plaintiff's exercise of due care, considering the theory upon which the case was submitted to the jury, the verdict is against the weight of the evidence. If the space between the moving belt and the stack was as narrow as testified to by the plaintiff, his attempting to walk through this narrow space in the manner testified to did not constitute the exercise of due care on his part. On the theory upon which the case was submitted to the jury, the danger was obvious, if the belt was likely, in its loose condition, to wobble laterally. But plaintiff could have passed through sideways, with his back to the stack; he could have stooped, or passed through on his hands and knees; he could have walked around the machine twenty-five feet to the rear and passed on the side of the thresher away from the vicinity of the belt. But there is testimony in the case which, we think, precludes holding that the plaintiff was negligent as a matter of law. Defendant's witness Moore testified: "I throwed the belt off. [Referring to the engine.] Generally when I throw the belt off I look back to see it don't catch anyone, and as I look back I see this boy Goodman going towards the machine. Well, probably he was probably three foot — three, four or five foot away, going towards it, and I stoops

down to roll up the belt, and he came to me, that is all. I didn't see him get hurt." It may be inferred from this testimony that when the plaintiff, with his back to Moore, stepped toward the thresher, intending to pass between it and the stack, Moore threw the belt off, causing it to wobble or move laterally in plaintiff's direction, catch the plaintiff's sleeve and throw him against the thresher. It appears from 'Moore's testimony that there was danger that the belt would catch one who was near it when it was thus thrown off, for he " generally " looked back when he threw the belt off " to see it don't catch anyone." Herein may lie the true explanation of the accident. If this testimony is true, it bore strongly upon the issue of plaintiff's negligence, for the jury would have been warranted in finding that, if the belt was running smoothly and without lateral wobbling when plaintiff attempted to pass between it and the stack, and would not move laterally unless interfered with, there was no such danger as made plaintiff's conduct in attempting the passage negligent, whereas such a conclusion would be against the weight of the evidence, as above pointed out, if the belt was at that time wobbling laterally, or if, being loose, it was likely to wobble laterally, and plaintiff should have reasonably anticipated that it might do so. On the other hand, if, as defendant claims, the belt did not, and would not ordinarily, even in its condition of looseness, wobble laterally in its ordinary operation, plaintiff could not reasonably have anticipated that the belt would be thrown off so as to catch him or endanger him as he was passing between the thresher and the stack with his back towards Moore, who says that he threw the belt off. We regard this evidence as important as bearing upon the care used by the plaintiff and required of him under all the circumstances. But as this evidence was not referred to in the court's charge to the jury, and as the case was submitted upon the theory that the lateral wobbling of the belt was caused by its looseness, the finding that the plaintiff was free from negligence cannot be sustained upon a different ground. It may be said that the plaintiff should be held to the theory upon which, with the acquiescence of his counsel, the case was submitted to the jury. This would ordinarily be true, but, assuming that the plaintiff's testi-

mony is true, he gave the best account that he could of what happened, so far as he was able to observe. He could not see Moore throw the belt, for Moore was behind him. He did testify that the belt wobbled toward him after he entered the lane, but this is consistent with Moore's having at that moment thrown the belt. Under these circumstances, if the record discloses evidence from which it can be inferred that the accident was due to the act of Moore which plaintiff could not have reasonably anticipated, it would be unjust to the plaintiff to hold him negligent as a matter of law and dismiss the complaint simply because, under the theory of the accident evolved by his counsel, plaintiff appears to have been negligent. Plaintiff's rights should be determined by the facts proved, considering all the evidence in the case, and not by any theories. But it would be obviously unfair to the defendant to permit this verdict to stand, appearing as it does that not only was the jury's attention not directed to this evidence but, disregarding it, their finding plaintiff free from negligence cannot be sustained by the evidence to which their attention was directed as constituting a sufficient basis for a verdict in favor of the plaintiff.

The appellant complains of errors in the charge, some of which are serious, but no exception was taken thereto, and, therefore, there is no occasion for discussing them.

We are of opinion that the judgment and order should be reversed and a new trial ordered, with costs to appellant to abide the event.

CLARKE, P. J., LAUGHLIN, SMITH and MERRELL, JJ., concurred.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.